(No. 69907.—<span style="background:black"> </span>

JOHN MARSHALL, a Minor, by Evelyn Marshall, his Mother and Next Friend, Appellee, v. THE CITY OF CENTRALIA, Appellant.

*Opinion filed March 21, 1991.*

2

CALVO and HEIPLE, JJ., took no part.

Judge & Knight, Ltd., of Park Ridge (Jay S. Judge, Sarah Hansen Sotos and Kathryn M. James, of counsel), for appellant.

Kujawski & Faerber, P.C., of Belleville (Fritz G. Faerber, of counsel), for appellee.

Kenneth J. Sophie, Jr., of the Law Offices of Gerard Facchini, of Chicago, for *amicus curiae* Illinois Trial Lawyers Association.

Kelly R. Welsh, Corporation Counsel, of Chicago (Ruth M. Moscovitch, Chief Assistant Corporation Counsel, and Jean Dobrer, Assistant Corporation Counsel, of counsel), for *amicus curiae* City of Chicago.

JUSTICE MORAN delivered the opinion of the court:

The mother of the plaintiff, Evelyn Marshall, as the plaintiff's next friend, filed a complaint on behalf of her son, John Marshall, in the circuit court of Marion

County, for injuries allegedly caused by the negligence of the defendant, the City of Centralia. Her son was injured when he stepped into an open sewer manhole on a parkway owned by the defendant. The defendant denied any liability and made a motion for summary judgment (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005). The trial court granted the motion, finding that no facts were pled which would indicate that the city owed a duty to the plaintiff. The appellate court reversed and remanded. (193 Ill. App. 3d 334.) This court allowed defendant's petition for leave to appeal (107 Ill. 2d R. 315). The Illinois Trial Lawyers Association and the City of Chicago both filed briefs as *amicus curiae* in this cause.

The sole issue presented for review is whether the defendant had a duty to maintain the sewer manhole cover on its parkway for the benefit of the plaintiff, a pedestrian.

The plaintiff, who was the only witness to the accident, testified at a deposition that his injuries occurred as follows. On October 19, 1985, he left his home on McCord Street to visit a friend who lived on the same side of McCord, but approximately a block east of his home. In order to reach his destination, he walked east upon the sidewalk parallel to McCord. As he approached the intersection of McCord and Sycamore, he noticed that the sidewalk on the other side (east) of Sycamore was so muddy that there was no clean path to walk on. Before entering the crosswalk on Sycamore, he decided to leave the sidewalk and walk out in the street to avoid getting mud on his tennis shoes. In doing so, he walked across a grass-covered parkway between the sidewalk and street and, before he stepped into the street, he fell because his entire right leg sank into an open manhole. As a result of his fall, he injured his knee, leg, hand, and wrist.

The trial court granted the defendant's motion for summary judgment and entered judgment in favor of the defendant, finding that the city did not owe a duty to the plaintiff. The plaintiff appealed, and the appellate court held "that the city ha[d] a duty to cover open sewer drains located in a parkway at a corner in a residential area." 193 Ill. App. 3d at 338-39.

The plaintiff maintains that the appellate court's holding was correct, because the city had a duty under the facts in this case to maintain its manholes and parkways for the benefit of the plaintiff. The defendant, on the other hand, claims that the parkway area, where the plaintiff fell, was not intended for pedestrian use and, therefore, the city owed no duty to the plaintiff.

In order to determine whether the defendant owed the plaintiff a duty, we must examine the Local Governmental and Governmental Employees Tort Immunity Act (the Act) (Ill. Rev. Stat. 1987, ch. 85, par. 1—101 *et seq.*). "The purpose of this Act is to protect local public entities and public employees from liability arising from the operation of government." (Ill. Rev. Stat. 1987, ch. 85, par. 1—101.1(a).) The Act outlines certain limitations and exceptions whereby a governmental body would not be subject to suit for its conduct. *Helle v. Brush* (1973), 53 Ill. 2d 405, 407.

The question of whether the defendant is liable to the plaintiff is governed by the limitation contained in section 3—102(a), which provides:

"Except as otherwise provided in this Article, a local public entity *has the duty to exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used,* and shall not be liable for injury unless it is proven that it has actual or con-

structive notice of the existence of such a condition that is not reasonably safe in reasonably adequate time prior to an injury to have taken measures to remedy or protect against such condition." (Emphasis added.) Ill. Rev. Stat. 1987, ch. 85, par. 3—102(a).

To properly state a cause of action for negligence, the plaintiff must establish that the defendant owed him a duty of care, a breach of that duty, and an injury proximately caused by the breach. (*Curtis v. County of Cook* (1983), 98 Ill. 2d 158, 162.) The question of whether the defendant owed the plaintiff a duty of care is a question of law to be determined by the court. (*McLane v. Russell* (1989), 131 Ill. 2d 509, 514.) Where the record only presents a question of law, a trial court may properly enter a motion for summary judgment. *Allen v. Meyer* (1958), 14 Ill. 2d 284, 292.

The defendant's duty in the instant case is limited by the language of section 3—102(a) (Ill. Rev. Stat. 1987, ch. 85, par. 3—102(a)), which "evinces a legislative intent to extend a duty of care only to those persons by whom the local government intended the property to be used." (*Curtis*, 98 Ill. 2d at 164-65.) The defendant concedes in its brief that pedestrians, such as the plaintiff, are permitted to walk upon its parkways. Therefore, we must determine whether the plaintiff was an intended user of the parkway.

The defendant maintains that while sidewalks are held out for pedestrian use, parkways are not. Parkways, according to the defendant, are intended to be used as "an area of beautification for trees, and so forth." Therefore, those who travel upon them do so at their own risk. The plaintiff and the Illinois Trial Lawyers Association contend that pedestrians are intended users of parkways because people customarily use parkways to: cut the lawn, plant shrubbery, gain access to

parked cars, or stand on while others are permitted to pass by on the sidewalk.

The Act became effective in 1965 and since then only two Illinois cases have addressed the issue of whether a municipality is liable for injuries to persons from parkway conditions. *Cunis v. Brennan* (1974), 56 Ill. 2d 372 (village had no legal duty to plaintiff where possibility was remote that person would be thrown from an automobile and impaled upon a broken drainpipe which protruded from a parkway); *Palermo v. City of Chicago Heights* (1971), 2 Ill. App. 3d 1004 (city not liable because of inadequate notice when plaintiff fell into a hole in parkway after lid to meter box flipped over).

The defendant has invited this court to review a number of appellate court cases that have held no duty is owed to jaywalkers. We decline to analogize the instant case to a jaywalking case. According to the plaintiff's deposition testimony, he stepped into the hole before he reached the street. At plaintiff's deposition, the following colloquy took place:

"Q. Your next step would have been right out into the street?

A. Right."

Moreover, the trial judge found that the accident occurred on the parkway.

"THE COURT: *** [I]t's not altogether clear that he ever reached the street. He stepped in that hole when he was on the boulevard and he never actually went into the street."

Prior to the passage of the Act, it was the common law of this State that a municipal corporation had a duty to exercise ordinary care to keep its parkways reasonably safe. *Brennan v. City of Streator* (1912), 256 Ill. 468; *Greig v. City of Park Ridge* (1964), 49 Ill. App. 2d 237; *Scarpaci v. City of Chicago* (1946), 329 Ill. App. 434;

*Koch v. City of Chicago* (1938), 297 Ill. App. 103; *Caruso v. City of Chicago* (1934), 278 Ill. App. 247.

An overwhelming majority of jurisdictions have found that municipalities may be liable to pedestrians who are injured because of unsafe or dangerous conditions within parkways. *Birmingham Water Works Co. v. Walker* (1942), 243 Ala. 149, 8 So. 2d 827; *Castro v. Sutter Creek Union High School District* (1938), 25 Cal. App. 2d 372, 77 P.2d 509; *Chazen v. City of New Britain* (1961), 148 Conn. 349, 170 A.2d 891; *Broder v. District of Columbia* (D.C. Mun. Ct. App. 1962), 184 A.2d 741; *City of Mitchell v. Stevenson* (1964), 136 Ind. App. 340, 201 N.E.2d 58; *Leonard v. Mel Foster Co.* (1953), 244 Iowa 1319, 60 N.W.2d 532; *Palefsky v. Mayor* (1956), 94 Ga. App. 597, 95 S.E.2d 715; *Dunn v. City of Emporia* (1957), 181 Kan. 334, 311 P.2d 296; *City of Elizabethtown v. Baker* (Ky. 1963), 373 S.W.2d 593; *Haindel v. Sewerage & Water Board* (La. App. 1959), 115 So. 2d 871; *Pierce v. City of Baltimore* (1959), 220 Md. 286, 151 A.2d 915; *Brennan v. City of Cambridge* (1955), 332 Mass. 613, 127 N.E.2d 181; *Jablonski v. City of Bay City* (1929), 248 Mich. 306, 226 N.W. 865; *Brittain v. City of Minneapolis* (1957), 250 Minn. 376, 84 N.W.2d 646; *Birdsong v. City of Clarksdale* (1941), 191 Miss. 532, 3 So. 2d 827; *Burgess v. Kansas City* (Mo. App. 1951), 242 S.W.2d 591; *Harms v. City of Beatrice* (1942), 142 Neb. 219, 5 N.W.2d 287; *Knoechel v. Inzirillo* (City Ct. 1940), 16 N.Y.S.2d 680; *Gettys v. Town of Marion* (1940), 218 N.C. 266, 10 S.E.2d 799; *Joseph v. City of Portsmouth* (1975), 44 Ohio St. 2d 155, 339 N.E.2d 622; *Oklahoma City v. Moore* (Okla. 1971), 491 P.2d 273; *Knight v. La Grande* (1928), 127 Or. 76, 271 P. 41; *Schaut v. St. Marys* (1940), 141 Pa. Super. 388, 14 A.2d 583; *Floyd v. Town of Lake City* (1957), 231 S.C. 516, 99 S.E.2d 181; *Garrett v. City of Wichita Falls* (Tex. Civ. App. 1959), 329 S.W.2d 491; *City of Maryville v. Mc-*

*Conkey* (1935), 19 Tenn. App. 520, 90 S.W.2d 951; *Dockery v. City of Norton* (1963), 204 Va. 752, 133 S.E.2d 296; *Fletcher v. City of Aberdeen* (1959), 54 Wash. 2d 174, 338 P.2d 743; *Townley v. City of Huntington* (1911), 68 W. Va. 574, 70 S.E. 368; see also 19 E. McQuillan, The Law of Municipal Corporations §54.38 (3d ed. 1985); Annot., 59 A.L.R. 387 (1929); Annot., 19 A.L.R.2d 1053 (1951).

Nevertheless, two States have held that municipalities are not liable to pedestrians who are injured as a result of unsafe conditions in parkways because pedestrians who use parkways travel on them at their own risk. *City & County of Denver v. Farmer* (1952), 125 Colo. 462, 244 P.2d 1086; *Dramstadt v. City of West Palm Beach* (Fla. 1955), 81 So. 2d 484.

Whether the defendant owed the plaintiff a duty requires this court to refer to the language of section 3—102(a) (Ill. Rev. Stat. 1987, ch. 85, par. 3—102(a)) and determine whether the parkway was for the intended use of the plaintiff. Intent, being a mental state, can rarely be discerned from direct proof and must ordinarily be inferred from the facts. (Black's Law Dictionary 727 (5th ed. 1979).) After carefully considering the foregoing authorities, the arguments raised in the briefs, the facts in the record and the reasonable inferences to be drawn therefrom, we conclude that the plaintiff was an intended and permitted user of the parkway. Thus, the defendant had a duty to exercise ordinary care to maintain the parkway in a reasonably safe condition for the benefit of the plaintiff.

We are not persuaded by defendant's argument that parkways are areas of beauty that were constructed with the intention that they only be looked at and not walked upon. It is this court's opinion that parkways, while beautifying the street, are also intended for the limited

use of pedestrians, such as the plaintiff in the instant case.

While parkways are not constructed with the intention of accommodating the kind of pedestrian traffic that is commonly associated with sidewalks, parkways have historically been used by pedestrians in a number of limited instances: *i.e.*, to enter a car that is parked at the curb; to retrieve mail from a mailbox; to reach a neighbor's house across the street; to board a bus; to stand on so that others can pass you on the sidewalk; to cut the lawn; to trim the shrubs; and to rake the leaves.

We find the comments in *Jablonski*, 248 Mich. at 309-10, 226 N.W. at 866, to be particularly instructive:

"[T]he city cannot lawfully, by the mere provision of suitable passageways for pedestrians, maintain dangerous and unreasonable obstructions or conditions *** at places where people may reasonably be expected to go. *** It cannot confine its citizens in a traffic groove. It must take into account the natural inclination of children to run about in play and the perverse insistence of adults to cut corners and cross streets and grass plats instead of following precisely the beaten or provided path. Such departure from the sidewalk is not negligence per se in the individual, nor does it relieve the city of the duty to keep its streets in proper condition for travel at the places where people may reasonably be expected probably to walk."

The defendant maintains that this decision will essentially require municipalities to care for parkways much like they presently care for sidewalks and, in the end, it will unreasonably burden municipal finances and manpower. However, the duty of care with regard to parkways is not identical to the duty of care with regard to sidewalks. Pedestrians who leave the sidewalk cannot assume that parkways are free of defects or undulations as they otherwise could when traveling on the sidewalk. Sidewalks are generally made of cement, while parkways

are composed of sod and earth and are therefore more susceptible to weather damage caused by rain and snow. (*Dunn*, 181 Kan. at 340, 311 P.2d at 302.) Municipalities cannot be held liable for parkway conditions which are customary, even though such conditions may be slightly dangerous. (*Schaut*, 141 Pa. Super. at 392, 14 A.2d at 585.) "However a city has no right to maintain anything in the nature of a pitfall, trap, snare or other like obstruction whereby the traveler, in yielding to the impulse of the average person to cut across a corner in a hurry, may be injured \*\*\*." *Castro*, 25 Cal. App. 2d at 380, 77 P.2d at 514.

For the reasons stated, the judgment of the appellate court is affirmed.

*Judgment affirmed.*

JUSTICES CALVO and HEIPLE took no part in the consideration or decision of this case.