**Marian WARD, Plaintiff Below, Appellant,**

v.

**SHONEY'S, INC., Defendant Below, Appellee.**

**No. 428, 2002.**

Supreme Court of Delaware.

Submitted Dec. 3, 2002.
Decided March 5, 2003.

---

18. ABA STANDARDS FOR IMPOSING LAWYER SANCTIONS Std. 9.32(i) (1991 & Supp.1992).

19. 765 A.2d 39 (Del.2000).

Andrew G. Ahern, III, of Joseph W. Benson, P.A., Wilmington, for Appellant.

Colin M. Shalk, of Casarino, Christman & Shalk, P.A., Wilmington, for Appellee.

Before HOLLAND, BERGER and STEELE, Justices.

BERGER, Justice:

This is an appeal from the entry of summary judgment for defendant in a personal injury case. Plaintiff tripped and fell while "cutting the corner" outside a restaurant in an effort to reach a newspaper machine. Defendant maintained a sidewalk for its patrons and also maintained an area of landscaping that was separated from the sidewalk by raised landscape edging. The trial court held that plaintiff's expert could not testify that people tend to cut corners because the expert had no reliable studies, data, or other methodology to support his opinion. We hold that the jury could properly find, based on its own understanding of human nature, that people sometimes cut corners, and that no expert testimony is necessary

on that point. The trial court did not question the reliability of the expert's opinion that the landscape edging in this case was a tripping defect. Thus, we hold that plaintiff has established a *prima facie* case and should be allowed to go to trial.

### Factual and Procedural Background

Marian Ward was walking from Shoney's Inn to a newspaper vending machine located outside Shoney's Appleby's restaurant. She attempted to cut the corner and walk across the landscaped area instead of staying on the paved sidewalk, but her foot hit something and she fell down. For present purposes, we accept her contention that she tripped on the raised landscape edging, which is approximately 2 inches higher than the adjacent sidewalk. Ward suffered personal injuries in the fall.

Ward alleges that Shoney's created a dangerous condition by using raised landscape edging when it knew or should have known that people tend to cut corners. She offered the expert opinion of David H. Fleisher, P.E., a civil and structural engineer, to support her claim. Fleisher prepared a two-page report in which he concluded, among other things, that the landscape edging was a tripping hazard and was the cause of Ward's fall. Fleisher also testified twice by deposition. He relied on a 1984 U.S. Department of Transportation study in concluding that the height of the landscape edging constituted a tripping hazard. But Fleisher was unable to provide any studies, reports or other authorities to support his opinion that people tend to cut corners in order to take the most direct route to their destination.

In 2000, the original trial judge denied Shoney's motion for summary judgment. The court held that, to establish that the existence of raised landscape edging con-

stituted negligence, plaintiff would have to provide expert testimony. The court then reviewed Fleisher's deposition and concluded "for pretrial purposes" that: 1) Fleisher is qualified as a professional engineer expert on walkway safety; and 2) although his opinion "did not depend heavily on scientific data," Fleisher demonstrated "some organized familiarity with the factors that determine fault...." The court rejected Shoney's challenge to the admissibility of Fleisher's testimony, but allowed Shoney's to renew its objection at trial. The court also permitted Ward to update Fleisher's report within a specified time.

■ The original judge retired sometime after denying Shoney's motion for summary judgment. When the case was reassigned, the new trial judge provided the parties with a short list of issues that, in its view, were not adequately addressed in Fleisher's first deposition. After Fleisher was deposed a second time, and asked about the issues raised by the court, Shoney's moved for an order excluding Fleisher's testimony and again moved for summary judgment. The trial court held that Fleisher's opinion is relevant, but that it is not reliable because it is not founded on any methodology. Having determined that the expert's testimony should be excluded, the court then granted Shoney's motion for summary judgment because, as the original judge had ruled, competent expert testimony is required to establish a *prima facie* case of negligence. This is Ward's appeal from that decision.

### Discussion

■ It is settled Delaware law that "a property owner owes a business invitee a duty to provide safe ingress and egress."[1] "The standard of care ... is to see that such portions of his premises as would

---

1. *Wilmington Country Club v. Cowee*, 747 A.2d 1087, 1092 (Del.2000).

naturally and ordinarily be used by his customers are kept in a reasonably safe condition for their use."[2] The elements necessary to establish liability are set forth in the Restatement of Torts:

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.[3]

Applying these principles to the facts of this case, Ward must establish that the landscape edging constituted a dangerous condition that caused her to fall, and that Shoney's should have known: (i) that the edging was a tripping hazard; and (ii) that patrons would attempt to cut the corner without realizing it was a hazard.·

The original trial judge determined that Ward could not establish all of the elements of her claim without expert testimony because it would be "difficult for a lay factfinder to draw the inference that Shoney's was negligent from the fact that it used raised landscape edging, a very common practice." Thus, the viability of Ward's claim turned on the admissibility of Fleisher's expert testimony. Rule 702 of the Delaware Rules of Evidence provides standards for the admission of expert evidence:

If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In *M.G. Bancorporation v. Le Beau*[4] this Court adopted the United States Supreme Court's holdings in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*[5] and *Kumho Tire Co., Ltd. v. Carmichael*[6] as the correct interpretations of Delaware's Rule 702, which is identical to the federal rule. *Daubert* held that the trial judge is a "gatekeeper," who must determine whether the proffered expert testimony is both relevant and reliable. The *Daubert* court identified several factors, such as testing, peer review, and publication, that contribute to a finding of reliability.

In *Kumho*, the Supreme Court held that *Daubert* applies to all expert evidence, not just scientific evidence. The Supreme Court emphasized the need for flexibility in assessing reliability, and noted that *"Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case."[7] It pointed out that, in "ordinary cases where the reliability of an expert's methods is properly taken for granted," a proceeding to determine·

**2.** *Robelen Piano Co. v. DiFonzo*, 169 A.2d 240, 244 (Del.1961).

**3.** Restatement (Second) of Torts § 343 (1965).

**4.** 737 A.2d 513 (Del.1999).

**5.** 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

**6.** 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

**7.** *Kumho*, 526 U.S. at 141, 119 S.Ct. 1167.

reliability is unnecessary.[8] The objective of the gatekeeping requirement is simply "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."[9]

■ Fleisher testified that, in designing walkways, civil engineers take into account the manner in which pedestrians will use those walkways. Since people tend to cut corners, Fleisher opined that the Shoney's walkway should have been designed without tripping hazards for those who cut the corner. Fleisher supported his "opinion" that people tend to cut corners with his own experience as a civil engineer and with his observation of the area where Ward fell. He supported his opinion that the edging constituted a tripping defect with a study of pedestrian falling accidents.

■ Expert opinions are appropriate where they will assist the jury in understanding the facts or the evidence. But the fact that people tend to cut corners is a matter of common knowledge and experience. More than 70 years ago, in a frequently cited passage, the Supreme Court of Michigan noted:

> [T]he city cannot lawfully, by the mere provision of suitable passageways for pedestrians, maintain dangerous and unreasonable obstructions or conditions in the street at places where people may reasonably be expected to go.... It must take into account the natural inclination of children to run about in play and *the perverse insistence of adults to cut corners and cross streets and grass plats instead of following precisely the beaten or provided path.*[10]

The Illinois Supreme Court, quoting a California decision, likewise noted the municipality's duty to keep parkways free from obstructions that would injure a "traveler ... yielding to the impulse of the average person to cut across a corner in a hurry ..."[11]

These decisions confirm the obvious— that we all know people cut corners. We may not know how frequently people cut corners, or what personality types are most likely to cut corners, or how close to the corners people tend to make the cut. Any of those additional facts might require expert testimony. The basic fact that people cut corners, however, does not. Thus, Fleisher does not have to support his premise that people cut corners as if it were an expert opinion on human behavior. Properly viewed, Fleisher's expert opinion relates only to the fact that designers should take into account pedestrian walking habits; and that, given people's tendency to cut corners, the landscape edging should have been low enough to avoid being a tripping hazard for those who took the short cut.

## Conclusion

Based on the foregoing, the judgment of the Superior Court is reversed and this matter is remanded for further action in accordance with this opinion. Jurisdiction is not retained.

---

8. *Id.* at 151, 119 S.Ct. 1167.

9. *Ibid.*

10. *Jablonski v. City of Bay City,* 248 Mich. 306, 226 N.W. 865, 866 (1929)(Emphasis added.).

11. *Marshall v. City of Centralia,* 143 Ill.2d 1, 155 Ill.Dec. 802, 570 N.E.2d 315, 320 (1991).