NOTICE
Decision filed 03/17/21 The text of this decision may be changed or corrected prior to the filing of a Peti ion for Rehearing or the disposition of the same.

2021 IL App (5th) 200160

NO. 5-20-0160

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| DONNA K. GODAIR, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Madison County. |
| | ) | |
| v. | ) | No. 16-L-382 |
| | ) | |
| THE METRO EAST SANITARY DISTRICT, | ) | Honorable |
| | ) | Sarah D. Smith, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

JUSTICE MOORE delivered the judgment of the court, with opinion.
Presiding Justice Boie and Justice Welch concurred in the judgment and opinion.

**OPINION**

¶ 1    The plaintiff, Donna K. Godair, appeals the circuit court of Madison County's granting of defendant, the Metro East Sanitary District's, motion for summary judgment in her personal injury action. For the following reasons, we affirm the circuit court's dismissal of the plaintiff's case.

¶ 2                          I. BACKGROUND

¶ 3    The Metro East Sanitary District (district) is a non-home rule Illinois sanitary district formed pursuant to the Sanitary District Act of 1917 (70 ILCS 2405/0.1 *et seq.* (West 2016)) for the purpose of developing, constructing, and maintaining hundreds of miles of ditches, levees, and drainage systems for the Metro East area. At the time of the plaintiff's accident, she lived on Sunset Drive in Granite City, Illinois. The district owns property located directly behind the plaintiff's

1

home on Sunset Drive to the east. A chain-link fence is located in the plaintiff's backyard, which runs parallel to the district's property.

¶ 4      Running parallel immediately east of the chain-link fence is a dirt pathway that serves as a utility easement and maintenance road (maintenance road) for the district, as well as various other utility companies. Also running parallel immediately east of the maintenance road is Nameoki drainage ditch (ditch). The district uses the maintenance road to allow access for its tractors and heavy machinery to mow and make repairs to the ditch. The ditch is large, being 45 feet wide and 20 feet deep. Between the maintenance road and the ditch is the ditch edge. This area generally consists of uneven ground and taller grass and weeds. It is not mowed or beaten down like the maintenance road. Finally, the Madison County Transit (MCT) owns, operates, and maintains a paved bike path/walking path (paved path) with signage that runs throughout Granite City. A section of this paved path goes through the district's property where the plaintiff was injured. This paved path runs parallel to the maintenance path. However, the paved path is located on the opposite side of the ditch from that of the maintenance path.

¶ 5      Some of the district employees were deposed in the discovery stage of this matter. The employees testified that the ditch is used solely for drainage purposes. The district did not construct any signs or other markings to indicate whether or not pedestrians were allowed or forbidden to use the maintenance road, the edge of the ditch, or the ditch itself. The district never received any complaints about the property where the plaintiff was injured. The district was unaware of the soft ground condition that the plaintiff claims caused her injury. The district does not intend for pedestrians to use its property. The employees instruct pedestrians who are discovered on the property to leave.

2

¶ 6	Godair also gave deposition testimony in this matter. She testified that she knew the district owned the property where her accident occurred. She also testified that she never received permission to be on the property and was unaware of anyone that has ever received permission from the district to be on the property. She was not aware of anyone else who had fallen into the ditch or fallen on the maintenance road nor was she aware of anyone complaining about the condition of the district's property.

¶ 7	Godair also testified regarding how her injury occurred. She stated that on March 26, 2015, she was with her two young grandchildren, ages three and seven, in the backyard of the home on Sunset Drive. Godair, along with the two children, exited the backyard and walked onto the district's maintenance road. She testified that the three of them walked along the road near the chain-link fence on the opposite side of the maintenance road away from the ditch because she knew the ditch could be dangerous.

¶ 8	Godair's grandson then ran toward the edge of the ditch and said he was "going to go down the hill." Godair chased after the boy leaving the maintenance road and going onto the edge of the ditch. Godair testified that the ground at the edge of the ditch was soft and that the ground compressed or "sunk" underneath her foot. She denied there being a hole.

¶ 9	EMS personnel who responded to the plaintiff's injury also gave deposition testimony. Both of the EMS personnel who were deposed testified that the plaintiff told them that she had "slipped in the mud."

¶ 10	On March 22, 2016, the plaintiff filed her complaint, alleging, *inter alia*, that the district's failure to properly maintain its property caused her injury, that the district knew or should have known of the dangerous condition, and that the district had a duty to maintain its property "in a reasonably safe condition for persons lawfully on said premises including the [p]laintiff herein."

3

¶ 11　In response, the district answered the plaintiff's complaint by denying the allegations. The district went on to raise two affirmative defenses. The first was that the district is a local public entity, and thus, if it owed any duty to the plaintiff, it only owed such a duty as set forth in the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/1-101 *et seq.* (West 2016)). Specifically, under section 3-102 of the Tort Immunity Act (*id.* § 3-102), a local public entity is not liable for the plaintiff's injuries unless the plaintiff proves the district had actual or constructive notice of the condition. Further, that the district only has a duty to maintain its property for those people that are intended and permitted users of the property, and the district maintained that plaintiff was neither an intended nor permitted user. Second, the district raised the affirmative defense of contributory negligence in that the district alleged that the plaintiff, *inter alia*, failed to keep a proper lookout and failed to avoid an open and obvious condition.

¶ 12　Following the initial filings of the parties, the plaintiff served a request to admit facts on the district pursuant to Illinois Supreme Court Rule 216 (eff. July 1, 2014). The district failed to timely respond within 28 days as required by Rule 216(c). Ill. S. Ct. R. 216(c) (eff. July 1, 2014). As a result, the plaintiff moved for the circuit court to deem all the facts contained in the request to admit admitted. The district responded that the plaintiff had agreed to extend the deadline for its response to the requests; however, the district could not produce any evidence to support that contention. As a result, the circuit court entered an order on December 15, 2016, admitting the plaintiff's first request to admit facts "as filed."

¶ 13　Of particular relevance to the issues on appeal is request to admit number 6, which reads as follows: "On the West side of said parcel, Defendant has a grass covered path extending from Saint Claire Avenue to Terminal Avenue (hereinafter 'parkway'), which runs North by South."

4

Following the circuit court's entry of the order deeming the plaintiff's request to admit facts as admitted, the district filed a motion requesting that the circuit court strike the word "parkway" from the plaintiff's request to admit facts on the basis that it constituted an improper legal conclusion. On February 28, 2018, following briefing from the parties, the circuit court denied the request to strike as the objection was deemed by the court to be untimely. In the order denying the district's request to strike the term "parkway," Judge William Mudge stated: "It should be pointed out that no request specifically asked the defendant to admit that the area in question is, in fact, a parkway. Plaintiff merely described areas that *she chose* to call a parkway—'(hereinafter parkway)'—within requests that requested the defendant to admit other facts." (Emphasis in original.)

¶ 14    During the interim between the initial service of the plaintiff's request to admit on the district and the circuit court's decision in February 2018 to deny the district's request to strike the term "parkway," numerous filings were made by the parties. The majority of these involve aspects relating to discovery and related discovery disputes. We will not discuss these filings in detail here as they are not relevant to our analysis of the issues before us. However, there were a few noteworthy filings to the matters at hand.

¶ 15    On May 25, 2017, the plaintiff filed a motion for partial summary judgment alleging that the facts of the case were not disputed and that plaintiff had established that the district owed her a duty, breached that duty, and the breach caused her injuries. The motion further alleged that there were no facts to support the district's affirmative defenses.

¶ 16    The district then moved for leave to file an amended answer and additional affirmative defenses. The circuit court granted the district's motion, and on August 8, 2017, the district

amended its answer to include four additional affirmative defenses based on the Tort Immunity Act. The district also added a counterclaim against the plaintiff for criminal trespass.

¶ 17    All of this legal maneuvering led to the circuit court entering an agreed order on March 28, 2018, which instituted a briefing schedule that had been agreed to by the parties. The schedule allowed for time for the parties to file their final cross-motions for summary judgment, memoranda of law in support of their positions, and any necessary responses or replies.

¶ 18    Following the entry of this order, Judge Mudge ceased presiding over the case, and Judge David Hylla was assigned to handle the matter moving forward. The plaintiff moved for a substitution of Judge Hylla pursuant to section 2-1001(a)(2) of the Code of Civil Procedure (735 ILCS 5/2-1001(a)(2) (West 2018)). That motion to substitute judge was granted, and Judge Sarah Smith was assigned to the case in Judge Hylla's place.

¶ 19    On September 27, 2019, the district filed its motion for summary judgment as to the plaintiff's negligence claims, in which it argued the following: (1) the plaintiff was a trespasser, (2) the plaintiff was not an intended and/or permitted user of the edge of the ditch for purposes of the Tort Immunity Act (745 ILCS 10/3-102(a) (West 2016)), (3) the district did not owe the plaintiff a duty based on traditional duty factors, (4) the district did not breach any duty even if one existed, and (5) the district was absolutely immune from liability pursuant to the Tort Immunity Act (*id.*), because it did not have actual and/or constructive notice of the soft ground that the plaintiff claims caused her to fall.

¶ 20    On October 10, 2019, the district filed its response to the plaintiff's motion for partial summary judgment. The district responded to the plaintiff's allegations by again denying it owed any duty to the plaintiff or, in the alternative, it denied that it breached any duty owed to the

plaintiff. It further denied that the district had admitted the area where the plaintiff fell was a "parkway," and it reasserted its affirmative defenses based in the Tort Immunity Act (*id.*).

¶ 21 On October 22, 2019, the plaintiff filed a reply brief. As an exhibit, she included an affidavit in support of her partial summary judgment. That affidavit stated that she retrieved her grandson, who was on the edge of the ditch. Then, while still on the edge of the ditch or "parkway,"

> "the ground under my foot sank as the ground along the parkway slid toward the ditch, the ground at the top of the ditch slid toward the bottom of the ditch, the ground on the slope slid toward the bottom. The ground sliding toward the ditch caused me to slip down the drainage ditch with the ground sinking under my foot. It was like quick sand [*sic*] once the ground start[ed] giving way."

¶ 22 On October 24, 2019, the circuit court heard arguments on the pending summary judgment motions and took the matters under advisement. On May 13, 2020, the circuit court rendered its ruling in favor of the district, granting its motion for summary judgment. This order was thoroughly detailed, spanning nearly five pages, and explained the court's ruling regarding the various issues raised by the parties. Specifically, the circuit court first found that the plaintiff was not a trespasser due to the fact that no ordinances prohibited her from entering the property and no signs prohibited her from entering the property. Second, the court found the maintenance road and edge of the ditch did not meet "the legal definition of a parkway" as alleged by the plaintiff. The circuit court included a footnote regarding this finding, which noted that even if the court had determined the edge of the ditch to be a parkway, the district still would be entitled to summary judgment as a matter of law because a "[m]unicipality's duty of care does not extend to customary parkway conditions, even when those conditions may be characterized as 'slightly dangerous.' [The] [p]laintiff did not allege she was injured by a 'pitfall, trap, or snare' on the parkway. Instead,

7

she alleges and testifies that she was injured when the ground was 'soft,' and 'sunk like quicksand.' "

¶ 23    The court next looked to whether the plaintiff was a permitted and intended user pursuant to the Tort Immunity Act. *Id.* § 3-102. The court here found that while the plaintiff was a permitted user of the maintenance road, she was not an intended user due to the fact that the district had constructed the maintenance road not for the purpose of allowing pedestrians to traverse its property but, instead, so that the district could maintain and access the ditch with the vehicles necessary to complete the maintenance work. The court relied on Illinois case law that instructed courts to examine the "physical manifestations of the property to determine its intent such as lighting, signs, special markings, hand rails [*sic*], and curbs to determine whether this was intended for use by pedestrians." See, *e.g.*, *Wojdyla v. City of Park Ridge*, 148 Ill. 2d 417, 426 (1992). Finding that the district's property lacked any physical manifestations that would welcome pedestrians other than a curved lip/apron on either side of the maintenance road and that a paved bike path/walking path rests on the opposite side of the ditch that is designated for pedestrians, the intent for pedestrians to use the maintenance road was not evident.

¶ 24    Finally, the circuit court found that, even if the court had found the plaintiff to be a permitted and intended user of the maintenance road, the plaintiff's case could not succeed because as a matter of law she was unable to meet the traditional duty factors required in a lawsuit based in negligence. The court specifically found that the plaintiff could not satisfy the third and fourth factors of "the magnitude of the burden of guarding against the injury" and "the consequences of placing that burden on the defendant" because the district maintained hundreds of miles of drainage ditches and, thus, eliminating the hazard complained of in this case would be an "unduly oppressive (if not impossible) obligation on the [d]efendant."

8

¶ 25    Following the circuit court's ruling, the plaintiff filed this timely appeal.

¶ 26                                    II. ANALYSIS

¶ 27    The plaintiff comes before this court arguing that the circuit court erred in granting summary judgment in favor of the district. In doing so, the plaintiff raises a number of specific issues in the circuit court's May 13, 2020, order to support this general contention, specifically: (1) "Whether [Illinois] Supreme Court Rule 216 requires the trial court to accept as true the facts in [the] [p]laintiff's [r]equest to [a]dmit," (2) "Whether a question of fact existed such that [s]ummary [j]udgment was improper," (3) "Whether the trial court erred in finding no duty existed," and (4) "Whether the trial court erred in finding as a matter of law [the] [p]laintiff is not an intended user [of the district's property under the Tort Immunity Act]."

¶ 28    "To properly state a cause of action for negligence, the plaintiff must establish that the defendant owed [her] a duty of care, a breach of that duty, and an injury proximately caused by the breach. [Citation.] The question of whether the defendant owed the plaintiff a duty of care is a question of law to be determined by the court. [Citation.] Where the record only presents a question of law, a trial court may properly enter a motion for summary judgment." *Marshall v. City of Centralia*, 143 Ill. 2d 1, 6 (1991).

¶ 29    Therefore, in order for the district to be liable for the plaintiff's injuries, the plaintiff has to demonstrate that the district owed her a duty under the circumstances of this case. We find that the plaintiff has failed to establish that the district owed her a duty. Further, the plaintiff in her appellate brief offers no direct argument as to why the circuit court's finding that she failed to meet the traditional duty factors was in error. Instead, the plaintiff's argument on appeal focuses on the issue of the status of the property, particularly whether it should be deemed a "parkway." In fact, the plaintiff believes the court's determination that the edge of the ditch was not a parkway is

9

determinative of the issue of the propriety of summary judgment (*e.g.*, "Following Supreme Court Rule 216 would make the remainder of the trial court's decision moot and require trial on the issues of breach and damages in this case."). On this point, the plaintiff is incorrect.

¶ 30    The circuit court not only found that the edge of the ditch did not constitute a "parkway" in the legal sense but further found that, even assuming that it was, summary judgment in favor of the district was still proper because the plaintiff was not injured by a "pitfall, trap, or snare." To this, the plaintiff makes no response or argument in her appellate brief. In other words, the plaintiff offers to this court no reasoning as to how the determination of this piece of property as a "parkway" allows her claim to be successful.

¶ 31    While the plaintiff's failure to offer any direct arguments, as to how the district owed her a duty under the traditional duty factors or how deeming the property a "parkway" allows her claim to be successful or creates a triable issue of fact, could be deemed to result in forfeiture of these issues,[1] we nevertheless address them below.

¶ 32    First, we will examine the traditional duty factors because if no duty is owed, then the plaintiff's negligence claim cannot be successful. The Illinois Supreme Court in *Bruns v. City of Centralia* outlined the law that governs how our analysis must be conducted in the present case:

"Here, the underlying facts are not in dispute. The only issue is whether, under those facts, the City owed a duty to plaintiff. Whether a duty exists is a question of law for the court to decide. [Citation.] 'In the absence of a showing from which the court could infer the existence of a duty, no recovery by the plaintiff is possible as a matter of law and

---

[1]Argument must contain the contentions of the appellant, the reasons therefor, and the citation of authorities; points not argued in an opening brief are forfeited and shall not be raised in the reply brief, in oral argument, or in a petition for rehearing. Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018).

10

summary judgment in favor of the defendant is proper.' [Citation.] We review summary judgment rulings *de novo.* [Citation.]

In resolving whether a duty exists, we ask 'whether defendant and plaintiff stood in such a relationship to one another that the law imposed upon defendant an obligation of reasonable conduct for the benefit of plaintiff.' [Citation.] Four factors guide our duty analysis: (1) the reasonable foreseeability of the injury, (2) the likelihood of the injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of placing that burden on the defendant. [Citations.] The weight to be accorded these factors depends upon the circumstances of a given case. [Citation.]

Under section 3-102 of the *** Tort Immunity Act ***, a local public entity, like the City here, 'has the duty to exercise ordinary care to maintain its property in a reasonably safe condition.' 745 ILCS 10/3-102 (West 2012). The Tort Immunity Act did not create this duty; it merely codified the duty that existed at common law. [Citation.] Thus, in determining whether the City's general duty of care set forth in section 3-102 extended to the risk at issue in this case—the defective sidewalk—we look to the common law. [Citation.]

One common law construct relevant here is the 'open and obvious rule.' Generally, under this rule, 'a party who owns or controls land is not required to foresee and protect against an injury if the potentially dangerous condition is open and obvious.' [Citation.]" *Bruns v. City of Centralia*, 2014 IL 116998, ¶¶ 13-16.

¶ 33 Before we continue with our analysis of the factors, we quickly discuss how the "open and obvious rule" applies to our analysis in the present matter.

11

¶ 34    The ditch and the ditch's edge would have constituted an open and obvious condition. The ditch involved in this case is not a typical ditch that runs alongside of a roadway or walkway that may be covered up or hidden by tall grass or weeds. Instead, this is a large drainage ditch that acts to direct a significant amount of water safely through the city. The ditch is 45 feet wide and 20 feet deep. Thus, the ditch would have been an open and obvious danger. The plaintiff acknowledged as much in her deposition testimony:

"Q. When you were walking, why were you walking closer to the fence?

A. For the kids' safety.

Q. And that's because there's a ditch with a deep slope right there, correct?

A. Yes.

Q. And if you fall in that, you can injure yourself, correct?

A. Yes."

¶ 35    Thus, as readily admitted by the plaintiff, she recognized the ditch on the day of the accident, further recognized it posed a danger due to its "deep slope," and walked on the opposite side of the maintenance road away from the ditch's edge to avoid any possible danger or subsequent injury. Only once her grandson strayed off the maintenance road and onto the ditch's edge did she leave the safety of the maintenance road to retrieve the child and save him from possible injury.

¶ 36    "The existence of an open and obvious danger is not an automatic or *per se* bar to the finding of a legal duty on the part of a defendant." *Id.* ¶ 19. Our supreme court further explained how the existence of an open and obvious condition may impact a court's duty analysis:

" 'In assessing whether a duty is owed, the court must still apply traditional duty analysis to the particular facts of the case.' [Citations.] Application of the open and obvious rule

12

affects the first two factors of the duty analysis: the foreseeability of injury, and the likelihood of injury. [Citation.] Where the condition is open and obvious, the foreseeability of harm and the likelihood of injury will be slight, thus weighing against the imposition of a duty." *Id.*

¶ 37 Thus, as we turn to examine the first two of the duty factors, we consider the open and obvious nature of the ditch. Because the danger of the ditch is open and obvious, as testified to by the plaintiff, the foreseeability of the injury and likelihood of injury are slight. One would expect an adult to be aware of the danger a large drainage ditch and its "deep slope" poses and to stay sufficiently away from its edge to avoid falling or slipping into it. In fact, that is the action the plaintiff testified she was taking initially. Unfortunately, the young child with her escaped from the plaintiff's control and strayed from the safety of the maintenance road resulting in the plaintiff choosing to leave the safety of her position to prevent the child from sustaining injury. While the act of recognizing a danger and leaving the safety of one's position to help prevent injury to another is courageous and commendable, it does not result in an exception to the open and obvious rule. One might argue that the plaintiff may have been distracted by her grandson's safety, but that type of distraction is not so foreseeable as to create an exception on the part of the district that would result in imputing liability. Further, the evidence demonstrates the opposite to be true. Here, the plaintiff was not distracted from the open and obvious condition by a different condition or potential danger. Instead, the plaintiff had her attention focused directly on the danger posed by the open and obvious condition and was reacting directly to it in order to protect her grandchild. See, *e.g.*, *id.* ¶¶ 19-35 (the supreme court briefly summarizes and reviews numerous distraction cases, noting that "the distraction exception will only apply where evidence exists from which a court can infer that plaintiff was actually distracted" and "plaintiff should not be allowed to recover

13

for self-created distractions that a defendant could never reasonably foresee" (internal quotation marks omitted)); see also *Sollami v. Eaton*, 201 Ill. 2d 1, 16-17 (2002) (exception did not apply to the open and obvious danger of "rocket-jumping" on trampoline because no evidence was presented tending to show the plaintiff was distracted).

¶ 38   Additionally, to the extent that the plaintiff argues that the actual "condition" was not the ditch but was the soft ground and therefore was not open and obvious, we disagree. Inherent in the dangers of large ditches, creeks, rivers, and similar bodies of water is the fact that the ground near the edge of these may be soft, loose, slippery, or give way, and this is especially true in cases such as this where the ditch is a large drainage ditch that has varying degrees of levels of water and has a "deep slope" or steep sides. Anywhere there is a moving body of water and steep edges, the risk is that getting too close to those edges might result in just the type of accident that occurred here. One cannot separate the edge of the body of water from the body of water when considering how that body of water poses a danger to those who encounter it.

¶ 39   Additionally, we note an important fact specific to this case. This piece of property is situated between two roadways, St. Clair Avenue and Terminal Avenue. MCT owns, operates, and maintains a paved bike path/walking path with signage that runs through Granite City. This paved path goes through the district's property where the plaintiff was injured. It runs parallel with the maintenance path but is located on the other side of the ditch. Given that MCT has already provided a safe marked pathway through the district's property that allows individuals to safely navigate the property only a short distance away, it is even more unforeseeable that an individual would, instead, choose to take an unmarked dirt pathway that abuts a large drainage ditch.

¶ 40   We now turn our attention to the remaining two duty factors, "the magnitude of the burden of guarding against the injury" and "the consequences of placing that burden on the defendant."

14

These were the two factors that the circuit court in its order specifically found weighed heavily against the plaintiff's position. We agree. Thus, even if one did not find the condition that injured the plaintiff to be open and obvious, the plaintiff's case would still fail, and summary judgment would still be appropriate due to these two factors alone.

¶ 41     The unrefuted testimony was that the district maintained hundreds of miles of drainage ditches throughout the city. In a somewhat analogous case, *DiBenedetto v. Flora Township*, 153 Ill. 2d 66 (1992), a municipality was sued following the death of a driver who accidentally drove off of the roadway into a drainage ditch. Essentially, the plaintiff argued in the complaint that the city failed to maintain drainage ditches in a way where drivers who left the roadway would not be severely injured. *Id.* at 70. The supreme court held that the city owed no duty in the case because

> "[n]either a township nor a municipality is an insurer against all accidents occurring on the public way. Just as a municipality is only required to maintain its streets and sidewalks for their normal and intended uses, a township is only required to maintain the traveled way, shoulders, and *drainage ditches* according to their normal and intended uses." (Emphasis added.) *Id.* at 71-72.

The court went on to hold that the burdens and consequences of a municipality having to protect against such injuries or accidents was simply too great for a legal duty to arise. *Id.* at 72.

¶ 42     While the facts of *DiBenedetto* differ from the case at hand, the outcome is the same. Where a public entity is responsible for maintaining hundreds of miles of ditches, or sidewalks, or roadways, it only has a duty to do so according to their normal and intended uses. *Id.*; see also *Warchol v. City of Chicago*, 75 Ill. App. 3d 289, 294 (1979). To hold otherwise, and require municipalities and public entities to prevent against injuries such as the one alleged in the present

15

case, would simply place too great a burden on the entities as the magnitude of protecting against such injuries would be essentially impossible.

¶ 43    The plaintiff attempts to lessen the anticipated burden on the district by arguing that the district would not have to maintain all of the edges of the drainage ditches but merely would have to place signs warning of the hazard or prohibiting entry by pedestrians. The plaintiff points to certain testimony of the district's employees that suggests that placing the signs, in and of itself, would not be difficult. While we acknowledge that act of placing signs alone may not be too great a burden (although it would surely be a significant undertaking), when one considers the costs of placing signs up and down hundreds of miles of drainage ditches and maintaining those signs, the burden increases substantially. This also fails to recognize that signs will be ineffective in situations such as this where the plaintiff was aware of the dangers of the ditch.

¶ 44    Thus, because the plaintiff has failed to establish that the district owed her a duty of care under the circumstances of her injury, summary judgment in favor of the district was appropriate. Thus, we affirm the circuit court in granting the district's motion for summary judgment and dismissing the action.

¶ 45    Though we have already affirmed the circuit court's order, we now briefly address the contention that the circuit court erred in finding that the edge of the ditch was not a "parkway."

¶ 46    First, we must simply state that the circuit court was correct in finding that the edge of a large drainage ditch does not constitute a "parkway." While this may be common sense, we will briefly elaborate.

¶ 47    As discussed by our supreme court in *Marshall*, 143 Ill. 2d 1, parkways are generally thought to be grass covered parcels of land between the sidewalk and the street that beautify the street, but that are also used by pedestrians in a limited number of instances. A parkway has also

16

been defined as a " 'landscaped strip of land paralleling or running in the center of a thoroughfare.' " *Barnhisel v. Village of Oak Park*, 311 Ill. App. 3d 108, 112 (1999) (quoting Webster's Third New International Dictionary 1642 (1993)). The quintessential parkway is that where a landscaped strip of land is surrounded by a sidewalk and a curb that runs adjacent to the street. Importantly,

> "[w]hile parkways are not constructed with the intention of accommodating the kind of pedestrian traffic that is commonly associated with sidewalks, parkways have historically been used by pedestrians in a number of limited instances: *i.e.*, to enter a car that is parked at the curb; to retrieve mail from a mailbox; to reach a neighbor's house across the street; to board a bus; to stand on so that others can pass you on the sidewalk; to cut the lawn; to trim the shrubs; and to rake the leaves." *Marshall*, 143 Ill. 2d at 10.

¶ 48     Obviously, the edge of the ditch here has no similarities whatsoever to a parkway. The area is not landscaped, there is no adjacent sidewalk or paved roadway, there are no mailboxes or trees, and there is no area where vehicles are parked or accessed. None of the homeowners walk on the edge of the ditch to trim bushes or rake leaves.

¶ 49     Despite the obviousness of this result, the plaintiff appeals to this court arguing that somehow the district by failing to answer the plaintiff's request to admit facts has admitted that the edge of the ditch is a parkway. Rule 216 does allow for a court to deem facts admitted which have been properly served on a party who fails to timely respond. Ill. S. Ct. R. 216 (eff. July 1, 2014). That is what the circuit court did in this matter. However, here, the plaintiff attempts to take advantage of the circuit court's ruling and improperly interpret her own requests to admit in order to achieve a result that she knows is not proper and could not be obtained through any other method.

17

¶ 50    The plaintiff relies on her following request to support her contention on this issue: "6. On the West side of said parcel, Defendant has a grass covered path extending from Saint Claire Avenue to Terminal Avenue (hereinafter 'parkway'), which runs North by South." The plaintiff's position is that because the circuit court deemed this statement admitted, the edge of the ditch has to be legally considered a parkway by the circuit court and this court. We disagree.

¶ 51    Clearly, the fact that was requested to be admitted was that on the west side of the district's property, there existed a grass covered path that extended north and south from St. Claire Avenue to Terminal Avenue. That is the fact requested to be admitted and that is the only fact the circuit court deemed admitted. The request does not ask the district to admit that "the grass covered path extending from St. Claire Avenue to Terminal Avenue on the west side of the district's property legally constitutes a parkway." That would be an improper request under Rule 216 because it would be asking the district to admit a legal conclusion. See *P.R.S. International, Inc. v. Shred Pax Corp.*, 184 Ill. 2d 224, 235-42 (1998) ("requests to admit may not include legal conclusions"). The use of the term "parkway" in the manner used in the plaintiff's request is irrelevant and is not binding on this case or the requests to admit. The plaintiff could have just as easily used the term "pathway" or "walkway."

¶ 52    Judge Mudge made this distinction very clear when he denied the district's motion to strike the term "parkway" from the request to admit. Judge Mudge stated:

> "It should be pointed out that no request specifically asked the defendant to admit that the area in question is, in fact, a parkway. Plaintiff merely described areas that *she chose* to call a parkway—'(hereinafter parkway)'—within requests that requested the defendant to admit other facts." (Emphasis in original.)

18

¶ 53    The edge of the ditch in this case where the plaintiff was injured is not a parkway, and no court is bound to treat it as such simply because the plaintiff so chose to do so in her request to admit.

¶ 54    Additionally, had the area been a parkway, summary judgment still would have been appropriate. As stated in *Marshall*:

"[T]he duty of care with regard to parkways is not identical to the duty of care with regard to sidewalks. Pedestrians who leave the sidewalk cannot assume that parkways are free of defects or undulations as they otherwise could when traveling on the sidewalk. Sidewalks are generally made of cement, while parkways are composed of sod and earth and are therefore more susceptible to weather damage caused by rain and snow. [Citation.] Municipalities cannot be held liable for parkway conditions which are customary, even though such conditions may be slightly dangerous. [Citation.] 'However a city has no right to maintain anything in *the nature of a pitfall, trap, snare or other like obstruction* whereby the traveler, in yielding to the impulse of the average person to cut across a corner in a hurry, may be injured \*\*\*.' [Citation.]" (Emphasis added.) *Marshall*, 143 Ill. 2d at 10-11.

¶ 55    The plaintiff has in no way alleged that the district allowed a "pitfall, trap, snare or other like obstruction" (*e.g.*, in *Marshall*, the pitfall was an open sewer manhole). Instead, the plaintiff in this case has alleged "soft" ground that "sunk like quicksand." Which is just the type of condition referenced above by our supreme court when it acknowledged that "sod and earth \*\*\* are therefore more susceptible to weather damage caused by rain and snow" and "[m]unicipalities cannot be held liable for parkway conditions which are customary, even though such conditions may be slightly dangerous." *Id.* at 11.

19

¶ 56                                III. CONCLUSION

¶ 57     For the foregoing reasons, we affirm the summary judgment dismissal by the circuit court.


¶ 58     Affirmed.

**No. 5-20-0160**

| | |
|---|---|
| **Cite as:** | *Godair v. Metro East Sanitary District*, 2021 IL App (5th) 200160 |
| **Decision Under Review:** | Appeal from the Circuit Court of Madison County, No. 16-L-382; the Hon. Sarah D. Smith, Judge, presiding. |
| **Attorneys for Appellant:** | Edward W. Unsell and Joshua R. Evans, of Unsell Law Firm, P.C., of East Alton, for appellant. |
| **Attorney for Appellee:** | Brian M. Funk, of O'Halloran Kosoff Geitner & Cook, LLC, of O'Fallon, for appellee. |