NOTICE
Decision filed 01/06/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 220133-U

NO. 5-22-0133

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| LORI ANN SCHNAARE, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Madison County. |
| | ) | |
| v. | ) | No. 18-L-1062 |
| | ) | |
| BUBBY & SISSY'S, INC., | ) | Honorable |
| | ) | Christopher P. Threlkeld, |
| Defendant-Appellee. | ) | Judge, presiding. |

JUSTICE WELCH delivered the judgment of the court.
Justices Barberis and Vaughan concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court properly granted summary judgment in favor of the defendant in a negligence action brought by a patron for injuries she suffered after falling down the stairs in an establishment owned by the defendant.

¶ 2    The plaintiff, Lori Ann Schnaare, brought a two-count complaint against the defendant, Bubby & Sissy's, Inc., alleging (1) that, as a result of the defendant's failure to properly light and maintain the stairwell in its establishment, she fell while descending the stairs and suffered serious injuries; and (2) that the defendant knowingly and intentionally created a hazardous condition that a reasonable and careful business owner would know, or would reasonably anticipate, that it could put a patron at substantial risk of injury by serving alcohol on the second floor of its establishment when the only means of accessing that floor was a staircase. The defendant then brought a motion for summary judgment, arguing there was no evidence upon which a reasonable person could

1

conclude that any alleged unreasonably dangerous condition existed on its premises, the open and obvious doctrine precluded a finding in favor of the plaintiff, and the plaintiff could not prove that the defendant was the legal cause of her fall. The trial court granted the motion, finding that the defendant took reasonable steps to protect its invitees from the dangers of the stairs by displaying a clear and legible warning sign and that the defendant's duty did not also include assisting the plaintiff down the stairs. For the reasons that follow, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4     On September 16, 2019, the plaintiff filed a second amended complaint against the defendant, alleging that she was injured after attending a drag show at the defendant's establishment on September 3, 2017. Bubby & Sissy's, Inc. was a bar/nightclub located in Alton, Illinois; it was a two-story building with a bar located on the main floor. The drag show was held on the second floor, and the stairs were the only way for patrons to access it. In the complaint, the plaintiff alleged that the defendant owed a duty of reasonable care to its patrons. The plaintiff also alleged that the defendant breached that duty by failing to properly light the stairs, and consequently, she fell and hit her head, face, and neck. The plaintiff contended that the defendant also breached that duty by knowingly and intentionally creating a hazardous condition by serving alcohol on the second floor; not providing an elevator, escalator, or a less hazardous staircase; encouraging unmonitored alcohol consumption; serving or over-serving customers; failing to take reasonable steps to prevent customers from being overserved before they attempted to descend the stairs; and failing to provide assistance to impaired customers before they descended the stairs.

¶ 5     On February 14, 2022, the defendant filed a motion for summary judgment, in which the defendant contended that it was entitled to summary judgment for the following three reasons: (1) there was no evidence upon which a reasonable person could conclude that any alleged

2

unreasonably dangerous condition existed on its premises that was the cause in fact of the plaintiff's fall, (2) the open and obvious doctrine precluded a finding in favor of the plaintiff, and (3) the plaintiff could not prove that the defendant was the legal cause of her fall. The defendant acknowledged that it owed the plaintiff a duty of reasonable care to provide reasonably safe conditions in its establishment but argued that caselaw established that an open and obvious stairway was not unreasonably dangerous solely because of the risks inherent in using stairs. The defendant also argued that there was nothing about the condition of the stairs that caused the plaintiff's fall; she was aware of the stairs and their condition, including the lighting and their steepness; and she could see the stairs as she descended them. Thus, there were no circumstances that would lead to a triable issue of fact as to the existence of an unreasonably dangerous condition.

¶ 6    Attached to the motion for summary judgment was the plaintiff's July 29, 2019, deposition, in which she stated that she was 49 years old; she suffered from multiple health ailments, including morbid obesity; and she only drank alcohol once per year. On the night in question, she went to dinner at 140 Club in Bethalto with her friends. She did not have any alcoholic drinks while at dinner, and she ate either steak or chicken. After dinner, they went to Bubby & Sissy's; they arrived there around 8:30 p.m. or 9 p.m. Initially, she stayed downstairs in the bar and drank two Bahama Mama drinks. She then went upstairs to see the drag show, which started around 10 p.m. She went up the stairs without incident. During the drag show, which was approximately one hour, she believed that she drank two or three more Bahama Mamas. She quit drinking approximately 20 or 30 minutes before the show ended because she was driving. She claimed that she felt fine, was not intoxicated, and was not having trouble with her balance from drinking. However, she acknowledged that the medical records indicated that her blood alcohol level was elevated.

3

¶ 7    There were approximately 100 people watching the show, and, when it ended, many of them began to go downstairs while some lingered upstairs. Although the plaintiff's friends went downstairs, she stayed upstairs and went to the restroom. As she was going down the stairs, she fell on the third step from the top. There were handrails on both sides of the stairway, and she was holding on to the right side of the handrails; the handrails were too far apart for her to hold on to both sides at the same time. She described her method of descending the stairs as placing one foot on the next descending stair and then bringing her other foot to the same stair before proceeding to the next. She did not identify any defective condition of the stairs or the carpet, but she noted that the stairs were steep and dark. However, she acknowledged that she could see the stairs in front of her. She also acknowledged that there was nothing on the stairs that caused her to fall; there was no problem with the handrail, no raised carpet, no uneven step, and none of the lights were out.

¶ 8    The plaintiff did not recall any warning signs posted above the stairs. However, even if there were posted signs, she did not believe that she would have been able to see them because the stairwell was so dark. She also did not recall lighting going along the stairs.

¶ 9    Also attached to the motion was a July 30, 2019, deposition from Chad Sherwood, a bartender at Bubby & Sissy's, in which he testified that he was working on the night of the incident. Because the plaintiff told him that she had trouble walking, he let her and her friends go up to the second floor before it was opened to the public, so she did not have to rush going up the stairs. Although he did not help her up the stairs, he observed her friend help her by putting a hand on her back while she ascended. After the show, he did not make any arrangements for the plaintiff to get down the stairs. However, he had asked her to wait until everyone else went down before going down herself, so she was not rushed. As for whether she was intoxicated, he noted that she

4

did not seem impaired to him. He served her two drinks downstairs, and then he served her one more during the drag show before she switched to Sprite. He was the only bartender on the second floor. There was strip lighting along the left side of the stairs and bright yellow warning signs going up and down the stairs.

¶ 10    Michael Paynic, the owner of at Bubby & Sissy's, testified in his July 30 deposition that there had always been lighting going up the side of the stairs, but they remodeled approximately four years before and added LED lights up the side of the stairs to make it brighter. They also always had caution signs throughout the building because there were a lot of steps in the building, and it was over 100 years old. However, about five years ago, the signs were updated to "caution, please watch your step" signs. There were three of those signs coming down the stairs that were directly in front of the people descending the stairs.

¶ 11    Further, Jason Brooks, a bartender at Bubby & Sissy's, testified in his July 30 deposition that he was bartending downstairs that night, but he did not see the plaintiff ascending the stairs. In approximately March or April 2017, he installed the LED lighting going along the stairs. He also designed the caution signs that were posted throughout the bar; the signs were neon and were placed in well-lit areas.

¶ 12    On February 22, 2022, the plaintiff filed a response to the motion for summary judgment, contending that there was a question of fact as to the condition of the staircase and whether it was adequately illuminated. The plaintiff also argued that there was a question of fact as to whether the defendant exercised reasonable care once its employee became aware of the plaintiff's physical limitations and failed to make accommodations for her to descend the staircase.

¶ 13    After a hearing on the motion for summary judgment, on February 23, 2022, the trial court granted the defendant's motion. Regarding count I of the complaint, the allegation that the

5

defendant failed to keep the stairs adequately illuminated, the court found that there was no factual dispute that the plaintiff knew of the potential danger of the stairs as there were posted warning signs, and her own testimony demonstrated that she was able to see the stairs in front of her. Also, the court found that she was aware of how steep the stairs were as she had ascended them approximately one hour before her fall. The court noted that there was no expert testimony regarding the steepness of the stairs, the plaintiff could not point to any inadequate design or code violation with regard to the stairs, and there was no evidence presented of an unsafe condition or other circumstance relating to the stairs that would lead to a triable issue.

¶ 14 Regarding count II of the complaint, the allegation that the defendant knowingly and intentionally created a hazardous condition, the trial court noted that *Estate of Ruppel v. Hyeon Jin, Inc.*, 272 Ill. App. 3d 527, 528 (1995), addressed the issue of whether the duty to warn or assist existed when an intoxicated patron was unable to safely traverse stairs. There, the First District concluded that, absent any signs of impaired physical mobility that reasonably informed defendant that the patron could not safely ascend the stairs, a duty to warn or assist did not exist. *Id*. at 531.

¶ 15 In the present case, the trial court noted that the most favorable view of the plaintiff's case was that one of the defendant's employees was aware that the plaintiff had some difficulty ascending and descending stairs and made some accommodations for that condition. The employee observed the plaintiff ascend the stairs with one of her friends walking behind her with a hand on her back, which indicated there was an outward sign that the plaintiff had difficulty in walking or balancing. The court found that the *Ruppel* case suggested that, at the point that the employee became aware of the plaintiff's difficulty, the defendant had a duty to warn or assist.

¶ 16 Since there were warning signs displayed by the stairs, the trial court then questioned whether the defendant also had a duty to assist the plaintiff down the stairs. In answering that

6

question, the court noted that *Ruppel* used the conjunction "or," which suggested that one or the other was required but not both. Thus, the court found that the defendant had a duty to warn or assist the plaintiff and that it was undisputed that the defendant had warned her but only partially assisted. However, the court found that, by displaying warning signs and asking the plaintiff to wait until after the show and after everyone else had descended before she went down to the lower floor, the defendant took reasonable care to protect her from the danger inherent in the stairs. The plaintiff appeals.

¶ 17                                    II. ANALYSIS

¶ 18    The sole issue on appeal is whether the trial court erred in granting summary judgment in favor of the defendant.

¶ 19    Summary judgment is proper when the pleadings, affidavits, depositions, and admissions of record show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *General Casualty Insurance Co. v. Lacey*, 199 Ill. 2d 281, 284 (2002). A genuine issue of material fact exists where the facts are in dispute or where reasonable minds could draw different inferences from the undisputed facts. *Morrissey v. Arlington Park Racecourse, LLC*, 404 Ill. App. 3d 711, 724 (2010). Although a drastic means of disposing of litigation, summary judgment is an appropriate means to efficiently dispose of a suit when the moving party's right to the judgment is clear and free from doubt. *U.S. Bank, National Ass'n v. Reinish*, 2020 IL App (2d) 190175, ¶ 10. When determining whether a genuine issue of material fact exists, the trial court must construe the pleadings and evidentiary material in the record strictly against the moving party. *Smith v. Purple Frog, Inc.*, 2019 IL App (3d) 180132, ¶ 10. We review a trial court's decision to grant or deny a motion for summary judgment *de novo*. *General Casualty Insurance Co.*, 199 Ill. 2d at 284.

7

¶ 20   In a negligence action, a plaintiff must plead and prove that defendant owed a duty to plaintiff, a breach of that duty, and an injury proximately resulting from the breach. *Smith*, 2019 IL App (3d) 180132, ¶ 11.   The question of whether a duty exists is a question of law to be determined by the trial court. *Godair v. Metro East Sanitary District*, 2021 IL App (5th) 200160, ¶ 28.  In the absence of a showing from which the court could infer the existence of a duty, plaintiff cannot recover as a matter of law and summary judgment in favor of defendant is proper. *Bruns v. City of Centralia*, 2014 IL 116998, ¶ 13.  In determining whether a duty exists, the court should look to the following four factors: (1) the reasonable foreseeability of the injury, (2) the likelihood of the injury, (3) the magnitude of the burden on defendant to guard against the injury, and (4) the consequences of placing that burden on defendant. *Id.* ¶ 14.

¶ 21   As previously stated, *Ruppel* addresses the issue of what duty a business owner owes to an intoxicated patron who is injured traversing stairs.   In *Ruppel*, a hotel guest, while highly intoxicated, fell down some stairs at a hotel at which he was staying, which resulted in his death. *Estate of Ruppel*, 272 Ill. App. 3d at 528.  The guest was returning to the hotel after drinking in the bar and began ascending the stairs to the second floor. *Id.*  To get to the stairs, he had to walk by the front desk at which the manager was stationed. *Id.*  However, the manager neither warned him that the stairs were dangerous nor attempted to help him up the stairs. *Id.*  In finding that the hotel did not owe a duty to warn the intoxicated guest of the danger posed by the stairs or to assist the guest in ascending the stairs, the appellate court noted that stairways were generally not considered unreasonably dangerous solely because of the normal risks associated with using them. *Id.* at 530-31. Stairs, by their very nature, create the risk that persons using them might be injured in a fall, and the law did not require owners to foolproof stairs against normal risks. *Id.* at 530.

8

¶ 22    However, the appellate court acknowledged that a duty to warn or assist might exist in some circumstances, such as when there were signs of impaired physical mobility that would reasonably inform defendant that the guest could not safely ascend the stairs. *Id*. at 531. "Absent any signs of impaired physical mobility that reasonably informed defendant that the [guest] could not safely ascend the stairs, a duty to warn or assist does not exist." *Id*. Moreover, the court noted that "the public policy consideration of imposing on a hotel the burden of escorting intoxicated persons to their destinations would be quite onerous. Ultimately, the hotel would be required to provide for the total care and safety of intoxicated persons on its premises." *Id*. Since plaintiff failed to allege that the guest had displayed any outward signs of being physically incapacitated, such as difficulty in walking or balancing, and instead relied on the conclusory allegation that he was highly intoxicated, the court found that the injury was not reasonably foreseeable. *Id*.

¶ 23    Similarly, in *Smith*, where an intoxicated bar patron caught himself on fire by backing up into a wall-mounted gas heater in the bar's beer garden, the appellate court concluded that summary judgment was proper because the bar patron could not establish that the bar owed him a duty to provide a warning beyond the one placed above the heater or to take additional steps to prevent him from being harmed by the heater. *Smith*, 2019 IL App (3d) 180132, ¶¶ 3, 14. According to the court, a landowner did not need to remove all dangers from his premises to avoid liability. *Id*. ¶ 13. Thus, if the landowner maintained a dangerous condition on the premises, an adequate warning to invitees sufficed to render the condition reasonably safe. *Id*. The court found that, assuming the bar had a duty to warn its invitees of the hazard created by the heater, the undisputed facts established that the duty was discharged by providing an adequate warning sign. *Id*. ¶ 14. Also, since there was a clear and legible warning next to the hazard, and the patron acknowledged that he saw and understood that warning on previous occasions, the undisputed

9

evidence established that he was fully on notice of the burn hazard presented by the heater but voluntarily decided to confront that hazard despite the known risk. *Id.* ¶ 15. Thus, the court found that the patron's negligence claim would fail as a matter of law. *Id.*

¶ 24 First, in the present case, we note that the plaintiff has not pointed to any specific condition of the stairwell, such as raised carpet, an issue with the handrails, an uneven step, or a light out, that was the cause of her fall. Although she described the steps as steep and dark, she testified that she could see the stairs in front of her. There was also testimony from the defendant's employees that there was lighting above and along the stairs on the night of the accident. Thus, as the trial court noted, the issue here is what duty the defendant had to protect the plaintiff from the normal risks associated with using stairs.

¶ 25 In viewing the present case in the light most favorable to the plaintiff, it was established that the defendant was aware that the plaintiff had some physical mobility impairment, which made it difficult for her to safely traverse stairs. After the plaintiff told the bartender about her mobility issues, accommodations were made to help her safely traverse the stairs, such as allowing her access to the second floor before all of the other patrons and providing an additional warning for her to wait until after the show ended and everyone else went downstairs before going down herself.

¶ 26 In relying on *Ruppel*, the trial court found that, since the defendant was aware of the plaintiff's mobility issues, the defendant would have a duty to either warn the plaintiff about the dangers of the stairs or assist her in ascending and descending the stairs. See *Estate of Ruppel*, 272 Ill. App. 3d at 531 (suggesting that a duty to warn *or* assist exists where there are signs of impaired physical mobility that reasonably informed defendant that plaintiff could not safely traverse stairs). In other words, the court found that there was no duty to both warn *and* assist.

10

¶ 27    Since it was established that there were adequate warning signs stating, "caution, please watch your step," directly in front of the stairs, the defendant took reasonable care to protect the plaintiff from the risks associated with using stairs. In other words, the defendant discharged its duty of care by providing an adequate warning. Also, there was no evidence presented that could establish that the defendant owed a duty to provide additional warnings or to take additional steps to prevent the plaintiff from being injured from the risks associated with stairs. Thus, we find that the defendant did not have an additional duty to physically assist the plaintiff down the stairs.

¶ 28    We further find that there was no additional duty where the plaintiff, like the bar patron in *Smith*, voluntarily decided to confront the hazard, *i.e.*, the stairs, despite a known risk. The plaintiff knew that she had mobility issues that would impair her ability to safely traverse stairs, and she voluntarily ascended stairs that she described as steep and dark with the help of a friend, but then attempted to descend those same stairs without asking anyone for assistance. The bartender serving the plaintiff drinks upstairs was the same bartender who was aware of her mobility issues, so she could have requested his assistance if she felt that she could not safely get downstairs on her own. Also, her two friends, one of which assisted her in going to the second floor, did not foresee that she would need additional assistance in going down the stairs as they both left her upstairs to descend the stairs alone.

¶ 29    Moreover, although there was testimony that the plaintiff had some alcoholic drinks while at the defendant's establishment, and there was some dispute about how many drinks she had, there was no testimony that she was visibly intoxicated. The plaintiff claimed that she felt fine, was not intoxicated, did not feel like her balance was impaired, and had stopped drinking that night because she was driving. The bartender, who had served the plaintiff's drinks that night, testified that she did not seem intoxicated, and she even switched to drinking Sprite that night. Thus, the

11

plaintiff has presented no evidence that the defendant knew that she was intoxicated that night or that it was foreseeable that she would have trouble descending the stairs due to intoxication. Absent such evidence, the plaintiff's injuries cannot be deemed to be reasonably foreseeable as a matter of law, and her alleged intoxication cannot be relevant to the duty analysis in this case. See *Smith*, 2019 IL App (3d) 180132, ¶ 20 (there was no evidence that the bar knew that the patron was intoxicated, much less that he was so intoxicated that he was foreseeably likely to deliberately back into a hot wall heater, and, absent such evidence, his alleged intoxication cannot be relevant to the duty analysis). Thus, we conclude that summary judgment was proper.

¶ 30                                III. CONCLUSION

¶ 31    For the foregoing reasons, we affirm the judgment of the circuit court of Madison County.


¶ 32    Affirmed.