# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Morris v. Ingersoll Cutting Tool Co.*, 2013 IL App (2d) 120760

---

| | |
|---|---|
| Appellate Court Caption | DENNIS R. MORRIS and DOROTHY J. MORRIS, Plaintiffs-Appellants, v. INGERSOLL CUTTING TOOL COMPANY and D.I. PROPERTIES, INC., Defendant-Appellees. |
| District & No. | Second District<br>Docket No. 2-12-0760 |
| Filed | September 16, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action for the injury plaintiff suffered when he tripped and fell in a loading bay at defendants' business while making a delivery, the trial court properly entered summary judgment for defendants on the ground that the 1½-inch defect in the surface in the area where plaintiff fell was *de minimis* and not actionable in the absence of any aggravating factors that would be sufficient to negate the *de minimis* rule. |
| Decision Under Review | Appeal from the Circuit Court of Winnebago County, No. 10-L-423; the Hon. Eugene G. Doherty, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal      Louis F. Pignatelli and Elizabeth Uhrich, both of Pignatelli & Associates, P.C., of Rock Falls, for appellants.

William W. Ranard, Julie A. Teuscher, and Lea Ann C. Fracasso, all of Cassiday Schade LLP, of Chicago, for appellees.

Panel      JUSTICE BIRKETT delivered the judgment of the court, with opinion. Presiding Justice Burke and Justice McLaren concurred in the judgment and opinion.

## OPINION

¶ 1      Plaintiffs, Dennis Morris (Morris) and Dorothy Morris, appeal from the trial court's grant of summary judgment to defendants, Ingersoll Cutting Tool Co. (Ingersoll) and D.I. Properties, Inc. (D.I.). Plaintiffs brought a negligence suit against defendants after Morris tripped and fell on defendants' property. Plaintiffs alleged that defendants failed to maintain the premises in a reasonably safe condition. In granting defendants' motion for summary judgment, the trial court held that the defect on which plaintiff tripped, measuring 1½ inches high, was *de minimis* and thus not actionable. Plaintiffs appeal, arguing that the *de minimis* rule should not be applied given the overall size of the defect and the applicability of other aggravating factors. We disagree and affirm the judgment of the trial court.

¶ 2      I. BACKGROUND

¶ 3      On June 29, 2009, Morris, in his capacity as a truck driver for Con-way Freight (Con-way), stopped at the premises owned by D.I. and leased by Ingersoll to receive goods, as he had done three or four times previously. Morris backed his truck to the loading bay and began to disembark from the vehicle, facing the inside of his vehicle, in accordance with Con-way policy. After reaching the ground, while still facing the trailer, Morris stepped back with his right foot in order to shut the trailer door. His foot caught on a difference in elevation in the ground, which he estimated to be 1½ inches, causing him to fall and sustain injury. Morris was aware of the crack prior to June 29, 2009, and had informed defendants of it.

¶ 4      Rick Davis testified in a deposition that he was the facilities manager of defendants' premises. When asked whether the defect was located where a truck driver would be stepping out of his truck, Davis stated that it was dependent on the length of the trailer and how far a particular trailer was backed into the loading bay. Davis had taken classes covering trip-and-fall prevention where he learned that a one-inch difference in elevation was a rough

guideline for a trip hazard. He conducted weekly inspections for hazards on the premises, but there were no written procedures for these inspections or for his job duties. There were approximately 350 employees at the facility.

¶ 5 On October 25, 2011, plaintiffs' expert, Gary Hutter, visited the site with Morris and measured the defect. Plaintiffs submitted an affidavit from Hutter stating:

"The defect on which Mr. Morris tripped on June 30, 2009[,] is as follows: the asphalt and portions of the curb and associated curb gutter in the area of the fall had cracked in several directions and through a combination of subsidence and erosion, and presented an approximately: 1) 2.5 foot long, 1 foot wide, and 1.5 inches deep depression in the asphalt; and 2) the associated curb and gutter section had an adjacent approximately one foot long, 6 inch [*sic*], and 0.75 inch deep depression."

Plaintiffs also submitted Morris's own affidavit stating that the defect described by Hutter was the defect on which he tripped.

¶ 6 Defendants moved for summary judgment, which the trial court granted on the basis that the defect in question was *de minimis* and therefore not actionable. The trial court refused to consider the measurements of the defect beyond the 1½-inch height discrepancy, as Morris's deposition testimony did not indicate that anything beyond the height led him to trip. The court also noted that Hutter's testimony "concerning what the defect looks like *now* is dubious when describing a condition which he himself suggests takes place over time. Plaintiff did *not* describe such a depression, just a change in elevation" (emphases in original).

¶ 7                                                    II. ANALYSIS

¶ 8 On appeal, plaintiffs argue that the trial court erred in determining that the defect over which Morris tripped was *de minimis*, thereby foreclosing their negligence claim. Additionally, plaintiffs argue that the presence of aggravating factors removes the case from the *de minimis* rule and that the trial court erred in ignoring or rejecting the aggravating factors. Ultimately, plaintiffs contend that the trial court erred in granting summary judgment in favor of defendants.

¶ 9 Plaintiffs argue that a genuine issue of material fact exists as to whether the defect in the asphalt in the area adjacent to defendants' loading bay was *de minimis* and therefore the trial court erred in granting defendants' motion for summary judgment. "Summary judgment is appropriate where the pleadings, depositions, admissions, and affidavits on file, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Perez v. Sunbelt Rentals, Inc.*, 2012 IL App (2d) 110382, ¶ 7. We review *de novo* a grant of summary judgment. *Shannon v. Boise Cascade Corp.*, 208 Ill. 2d 517, 524 (2004).

¶ 10 We now turn to plaintiffs' claim of negligence. To state a cause of action for negligence, a plaintiff must allege facts establishing a duty of care owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 430 (2006). "A duty is an obligation imposed by law which requires one to conform to a certain standard of conduct for the protection of another against

an unreasonable risk." *Hartung v. Maple Investment & Development Corp.*, 243 Ill. App. 3d 811, 813 (1993). Whether the defendant owes a duty to the plaintiff and the scope of that duty are questions of law. *Glass v. City of Chicago*, 323 Ill. App. 3d 158, 165 (2001). In determining whether a duty exists and the scope of that duty, we consider the foreseeability of injury, the likelihood of injury, the magnitude of the burden of guarding against the injury, and the consequences of placing that burden on the defendant. *Simpkins v. CSX Transportation, Inc.*, 2012 IL 110662, ¶ 18.

¶ 11     Here, there is no question that defendants, the owner and lessee of the premises, owed Morris a duty to keep the premises in a reasonably safe condition. See *Choate v. Indiana Harbor Belt R.R. Co.*, 2012 IL 112948, ¶ 24 ("an owner or occupier of land *** owes a duty of reasonable care under the circumstances to all entrants upon the premises except to trespassers"); *Hartung*, 243 Ill. App. 3d at 816 (an owner or occupier's duty is of reasonable care under the circumstances and is to maintain the premises in a reasonably safe condition). The question, however, is whether the scope of defendants' duty included repairing a 1½-inch crack located in the loading bay where Morris's semitrailer was parked. Typically, courts have applied a *de minimis* analysis to outdoor surface defects located on sidewalks or parkways. Here, the trial court found that the *de minimis* rule applied. Thus, we determine whether the *de minimis* rule applies here to the defect located in defendants' loading bay.

¶ 12     If a defect is such that a reasonably prudent person would not anticipate some danger to persons walking upon it, it is considered *de minimis* and is not actionable. See *Arvidson v. City of Elmhurst*, 11 Ill. 2d 601, 605 (1957). The *de minimis* rule recognizes that minor defects are outside the scope of a landowner's duty to maintain the property in a reasonably safe condition, for the purposes for which the property is intended. See *Hartung*, 243 Ill. App. 3d at 814 ("[t]he *de minimis* rule *** is rooted in the scope of municipalities' duty to maintain their property in a reasonably safe condition"). The rule has been extended to private landowners and recognizes that requiring that sidewalks be kept free of minor defects would be unduly burdensome and impractical (*id.* at 817) and could be intolerably expensive (*Putman v. Village of Bensenville*, 337 Ill. App. 3d 197, 202 (2003)). There is no mathematical formula or bright-line rule as to what constitutes a slight defect, and each case must be determined on its own facts. *Hartung*, 243 Ill. App. 3d at 814.

¶ 13     However, as the Fourth District has noted, liability generally attaches for sidewalk defects approaching two inches in height. *Birck v. City of Quincy*, 241 Ill. App. 3d 119, 121, 124-25 (1993) (1⅞-inch elevation between two concrete slabs not actionable). The *de minimis* rule generally precludes negligence claims on lesser defects, absent aggravating circumstances. See, *e.g.*, *Hartung*, 243 Ill. App. 3d at 816-17 (applying the *de minimis* rule to three-quarter-inch sidewalk defect near a shopping center as it did not create a reasonably foreseeable risk of harm, noting the burden on the shopping center and the extreme Illinois weather conditions). Certainly here, a 1½-inch defect, located in an area not intended for and with little pedestrian traffic, is a minor defect, falling within the ambit of the *de minimis* rule. However, as there is no mathematical formula in applying the *de minimis* rule (*Hartung*, 243 Ill. App. 3d at 814), we consider the scope of defendants' duty with respect to the foreseeability of injury, the likelihood of injury, the magnitude of the burden of guarding against the injury, and the consequences of placing that burden on defendants. *Simpkins*,

2012 IL 110662, ¶ 18.

¶ 14     Defendants' duty of care toward Morris was not to maintain their premises in perfect condition, but to avoid creating an unreasonable risk of harm to Morris. See *Hartung*, 243 Ill. App. 3d at 816 (a landowner's duty is "to avoid creating an *unreasonable risk* of harm to an invitee" (emphasis in original)). We do not conclude that the 1½-inch defect here created an unreasonable risk of harm to Morris. His injury was not reasonably foreseeable, as it occurred in an industrial area used specifically for large semitrailers to be loaded with goods. For the same reason, the likelihood of injury was minor, as the area was not for pedestrian use, but was traversed by large, heavy trucks carrying heavy loads. We also consider the burden of guarding against the injury and the consequences of placing that burden on defendants. Plaintiffs argue that the cost to defendants in repairing a 1½-inch defect would be slight. However, requiring defendants to repair *every* 1½-inch defect in the loading bay area would create an economic burden similar to that of the shopping center in *Hartung*. *Id.* at 816-17. We acknowledge that the total area of sidewalks surrounding the shopping center in *Hartung* may have been greater than the total area of the loading bay here, thus presenting a greater immediate economic burden. However, in refusing to apply the *de minimis* rule, we would be placing a heavy economic burden on defendants over time. The loading bay here is far more susceptible to defects than the shopping mall sidewalks in *Hartung*, as it is trafficked by large trucks with heavy loads. Further, plaintiffs fail to support their contention that the cost of repair would be minor. Even viewing the record in the light most favorable to plaintiffs, as the trial court noted, defendants' facility is staffed by 350 employees and has a separate entrance for the public. This does not support an inference that the facility is small or that repairing the asphalt would not be burdensome to defendants, especially over a number of years.

¶ 15     Furthermore, as the area in question is not used as a pedestrian area like a sidewalk, it is helpful to compare the area to a parkway. When applied to parkways, the *de minimis* rule has allowed for height variations that might be unacceptable in a sidewalk. *E.g.*, *Barnhisel v. Village of Oak Park*, 311 Ill. App. 3d 108, 115 (1999) (2½-inch height differential between sidewalk and parkway causing plaintiff to fall was not unreasonably dangerous). While we acknowledge that courts have applied this dichotomy only in the context of the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/1-101 *et seq.* (West 2012); *Mazin v. Chicago White Sox, Ltd.*, 358 Ill. App. 3d 856, 861 (2005)), we find the logic behind the parkway/sidewalk distinction useful here.

¶ 16     Courts have noted that nonsidewalk areas, such as parkways, are held to a lesser standard, in part due to the changing conditions inherent in a landscaped area. See, *e.g.*, *Marshall v. City of Centralia*, 143 Ill. 2d 1, 10-11 (1991) ("parkways are composed of sod and earth and are therefore more susceptible to weather damage caused by rain and snow"). Here, the wear and tear on a loading bay traversed by these vehicles is more akin to the changing conditions of a parkway than to the light pedestrian use of a sidewalk. See *id.* at 10 (discussing the limited pedestrian uses of parkways: accessing a vehicle, retrieving mail, reaching a neighbor's house, boarding a bus, allowing pedestrian traffic to pass, completing yard work). Furthermore, just as a parkway has a far more limited pedestrian use than a sidewalk, here the loading bay is explicitly for vehicular use, in an industrial environment. Just as a

-5-

pedestrian cannot expect sidewalk conditions on a parkway, neither can he expect sidewalk conditions in a loading bay used for large semitrailers. See *id.* ("[p]edestrians who leave the sidewalk cannot assume that parkways are free of defects or undulations as they otherwise could when traveling on the sidewalk"). Even so, it is not clear that the defect in question here would be actionable even if it were located on a sidewalk. See, *e.g.*, *Birck*, 241 Ill. App. 3d at 124-25 (holding a 1⅞-inch sidewalk defect to be *de minimis*).

¶ 17    Applying the *de minimis* rule to the 1½-inch defect here is consistent with the justifications behind the rule. We hold that, without more, the 1½-inch crack in defendants' property was *de minimis*.

¶ 18    Plaintiffs further argue that, even if the defect would be considered *de minimis*, the aggravating factors of its dimensions and its location, specifically, in an area of ingress and egress where Morris would be distracted, remove the defect from such classification. Courts have found that the *de minimis* rule does not apply under certain aggravating circumstances such as the location of the defect (*e.g.*, *Baker v. City of Granite City*, 75 Ill. App. 3d 157, 160 (1979) (noting that an actionable defect 4 inches wide and 1¾ to 2 inches deep located on a busy commercial sidewalk might not be actionable if it were located in a residential area)), its width (see, *e.g.*, *Repinski v. Jubilee Oil Co.*, 85 Ill. App. 3d 15, 20-21 (1980) (considering the 1½-foot diameter of a sidewalk defect 1½ inches deep); *West v. City of Hoopeston*, 146 Ill. App. 3d 538, 542-43 (1986) (considering the two-inch width of a sidewalk defect a quarter of an inch deep)), or a policy of repairing such defects (*Martinkovic v. City of Aurora*, 150 Ill. App. 3d 589, 594 (1986) (removing defect from *de minimis* analysis where defendant had an express policy of repairing defects over one inch)).

¶ 19    Plaintiffs first argue that, even if the height of the defect alone is *de minimis*, the width and breadth of the "depression in the asphalt and the associated curb and gutter section" must be considered. Although in Morris's deposition testimony he referred to catching the back of his heel in "the crack," which he estimated to be between 1 and 1½ inches high, his affidavit stated that the defect on which he tripped "is the same defect described in the report of Gary Hutter."

¶ 20    Defendants argue that we should not consider these dimensions of the defect, because Hutter's affidavit violates Illinois Supreme Court Rule 191 (eff. Jan. 4, 2013) and should not have been considered by the trial court. Plaintiffs argue that defendants have raised this argument for the first time on appeal and thus we should not consider it. We agree with plaintiffs, as a party may not attack the sufficiency of an affidavit for the first time on appeal. *Kolakowski v. Voris*, 83 Ill. 2d 388, 398 (1980). Furthermore, defendants fail to specify the reasons why the report violates Rule 191, and defendants themselves referenced the report in their motion for summary judgment, such that they are estopped from changing their position on appeal. See *In re Marriage of Schneider*, 214 Ill. 2d 152, 172-73 (2005) (a party is not allowed to adopt and benefit from one position in the trial court and then expediently change its position in the appellate court).

¶ 21    Defendants also argue that the other dimensions did not cause Morris's fall and thus we should not consider them. However, in viewing the evidence in the light most favorable to plaintiffs, we accept the dimensions adopted in Morris's affidavit, as describing the defect

that caused his fall. Thus, we consider whether the added dimensions of 2½ feet in length and 1 foot in width are aggravating factors that remove the defect from the *de minimis* rule.

¶ 22    While a 2½-foot by 1-foot defect in a *sidewalk* may be a sufficient aggravating factor, the question here is whether those dimensions are aggravating factors in defendants' *loading bay.* This defect on a sidewalk, which averages 5 feet in width (Illinois Department of Transportation, Bureau of Design & Environment Manual, ch. 58.106 (2010)), would be over 40% of the sidewalk's width. The chances that a pedestrian would encounter the defect, and thus the foreseeability and likelihood of injury, would be increased by those added dimensions. In contrast, those dimensions here, in relation to the total length of the loading bay, have little effect on foreseeability. The photographs in the record show the loading bay to be at least the length of a semitrailer. As the maximum length of a tractor-semitrailer combination permitted in Illinois is 65 feet from front to rear axle (625 ILCS 5/15-107 (West 2012)), we assume the loading bay to be at least that length, if not actually longer.[1] Because 2½ feet of the total 65 feet is less than 4% of the length of the loading bay, the chances that the defect will be encountered are low, and far less than if the defect were located on a sidewalk. Thus, the foreseeability and likelihood of injury are also low. Because the defect is but a small crack in the entire loading bay area, its added dimensions do not preclude application of the *de minimis* rule.[2] We acknowledge that plaintiffs are concerned with an area of the loading bay that is smaller than the full length of the loading bay. However, we address below Morris's argument with respect to ingress and egress to his vehicle, that is, the smaller area of the loading bay where a driver might expect to encounter the defect.

¶ 23    Plaintiffs further argue that, because the defect is in an area of ingress and egress to Morris's truck, Morris had no choice but to encounter it, and, because he would be distracted upon encountering the defect, the *de minimis* rule does not apply. In support, plaintiffs cite *Harris v. Old Kent Bank*, 315 Ill. App. 3d 894 (2000).

¶ 24    In *Harris*, the plaintiff tripped on a one-inch defect on the sidewalk leading to defendant's bank. *Id.* at 895-96. The plaintiff had exited the building and was walking toward her car, which was parked in the parking space nearest to the bank. *Id.* at 895. The sidewalk consisted of a short portion leading from that parking space to the bank and a longer portion running parallel to the length of the bank and adjacent to the other parking spaces for bank

---

[1]Under our standard of review, we are to view the evidence in the light most favorable to the nonmoving party. *Perez*, 2012 IL App (2d) 110382, ¶ 7. In keeping with this standard, we assume that the loading bay is at least the length of the longest permissible tractor-semitrailer combination. The measurement from front to rear axle actually results in a shorter distance than the measurement from the nose of the tractor to the tail of the semitrailer, and so probably somewhat understates the length of the loading bay, which accrues to plaintiffs' (the nonmoving parties') favor.

[2]Our calculation of the percentage of the sidewalk or loading bay occupied by a defect of the given dimensions is for the purpose of concretizing an abstract discussion and providing a readily comprehensible illustration. It should not be viewed as an attempt to formulate a bright-line rule. Rather, it is to distinguish the defect here, using a concrete example, from the sidewalk cases that have held defects of similar dimensions to be outside of the *de minimis* rule.

patrons. *Id.* While recognizing that the defect was of similar dimensions to the defect in *Hartung*, we distinguished the defect on the basis that it was located on a sidewalk used exclusively for ingress and egress to the bank. We noted that a landowner has a duty to provide safe ingress and egress to his premises. *Id.* at 901-02. In finding that a genuine issue of material fact existed as to whether the defect was *de minimis*, we found that the risk of harm was reasonably foreseeable as the sidewalk was the only means of ingress and egress and an exiting patron "might be reviewing the receipts of her transactions, looking for her car keys, or looking toward her car and, therefore, would not discover the sidewalk defect." *Id.* at 902. We further noted that the defendant's economic burden of prevention, as compared to that of a municipality or a shopping center, would be less substantial, as the amount of sidewalk to be monitored and maintained was relatively slight. *Id.*

¶ 25    The facts here are distinguishable. While *Harris* concerned a sidewalk leading to the entrance of a bank, the defect here was located in defendants' loading bay. As previously discussed, sidewalk conditions are not to be expected in an industrial parking lot used to load semitrailers. Furthermore, as defendants note, the loading bay area was not a pedestrian means of ingress and egress to the facility, but was meant for vehicular traffic. Also, whereas in *Harris* all customers entering or exiting the bank would traverse the sidewalk in question, not all drivers parking at defendants' facility would encounter the defect while entering or exiting their vehicles. Whether the defect were encountered would depend on various factors, such as the type of truck, the length of its trailer, and the position of the trailer with respect to the loading bay. Even if Morris or other drivers could be distracted when exiting their vehicles, there is nothing to suggest that they would encounter the defect on a regular basis, and in fact the various sizes of different trailers indicate otherwise. Injury in *Harris* was reasonably foreseeable as all bank customers would use the sidewalk for ingress and egress. By contrast, here, the foreseeability of the harm is greatly diminished. The "imposition of a legal duty requires more than a mere possibility of occurrence" and is based on the foreseeability of harm, rather than what actually happened. *Hartung*, 243 Ill. App. 3d at 814.

¶ 26    Plaintiffs further argue that, as in *Warner v. City of Chicago*, 72 Ill. 2d 100 (1978), and *Alqadhi v. Standard Parking, Inc.*, 405 Ill. App. 3d 14 (2010), where a defect was obscured by snow or dim lighting, it was foreseeable that Morris would fail to see the defect given his manner of disembarking the vehicle. However, *Warner* addressed an obscured defect not in the context of the *de minimis* rule, but in the context of whether the plaintiff exercised due care. *Warner*, 72 Ill. 2d at 105 ("[w]ere the defect uncovered and apparent to those upon the sidewalk, however, the question of [the] plaintiff's due care would be less easily resolved, but that is not the factual situation here"). Thus, the court's *de minimis* analysis turned on the fact that the jury could have inferred that the defect measured 2 inches when the incident occurred, despite a 1⅛-inch measurement taken over five years after the incident. The court did not suggest that the layer of snow covering the defect affected its *de minimis* analysis, and it emphasized that its holding "should not be construed as diminishing the force of the general rule that a municipality is not liable for minor sidewalk defects." *Id.*

¶ 27    In *Alqadhi*, the plaintiff tripped and fell over a three-quarter-inch rise in the concrete of a wheelchair-accessible ramp in the defendants' parking garage. *Alqadhi*, 405 Ill. App. 3d at 15. The rise was obscured by dim lighting and was not marked with paint, thus appearing

to be a flat surface. *Id.* The court held that the impaired visibility of the defect removed it from the application of the *de minimis* rule. *Id.* at 19.

¶ 28     Unlike in *Alqadhi*, the defect here can be seen by a driver before exiting his vehicle and while approaching his vehicle to enter. It is not obscured by either dim lighting or an optical illusion. Rather, as described by plaintiffs' expert and from the photographs in the record, the defect can be clearly seen from different angles. Although it is possible that a driver exiting his vehicle, when aligned with the defect, would not see it as he disembarked, again the various sizes of different trailers make this occurrence unlikely.

¶ 29     Plaintiffs next argue that, as in *Martinkovic*, Davis's training, which indicated that one inch constitutes a trip hazard, removes the defect from the *de minimis* rule. In *Martinkovic*, 150 Ill. App. 3d at 591, the plaintiff tripped on a 1⅜-inch defect on a sidewalk maintained by the city of Aurora. The city had an express policy that deemed unsafe any defect over one inch in height and that required prompt repair. In affirming the trial court's denial of the city's motion for a directed verdict, we held that, based on the city's policy, we could not say that all reasonable minds would agree that the defect was *de minimis*. *Id.* at 594.

¶ 30     Here, there was no policy of repairing defects over an inch. The fact that Davis took classes establishing a general guideline about trip hazards does not transform his knowledge into an explicit company policy. Likewise, his weekly inspections of the premises do not give cause to remove the defect in question from the *de minimis* rule.

¶ 31     Because we find that there were no aggravating factors sufficient to remove the defect from the *de minimis* rule, we affirm the trial court's grant of summary judgment in favor of defendants.

¶ 32                         III. CONCLUSION

¶ 33     Accordingly, for the foregoing reasons, we affirm the judgment of the circuit court of Winnebago County.

¶ 34     Affirmed.